9718. WOOD *v.* LOUISVILLE AND NASHVILLE RAIL-ROAD COMPANY *et al.*

1. The motion to dismiss the writ of error is denied.
2. The court did not err in sustaining the motion for a nonsuit and dismissing the case.

DECIDED NOVEMBER 23, 1918.

Action for damages; from Columbia superior court—Judge H. C. Hammond. March 25, 1918.

The suit was for damages on account of alleged negligence in not furnishing a safe place of work.

The motion to dismiss the writ of error was on the ground that the evidence in the bill of exceptions was not properly briefed.

*L. D. McGregor, Hill & Adams,* for plaintiff.

*Cumming & Harper, J. B. Burnside, P. B. Johnson,* for defendant.

BLOODWORTH, J. The bill of exceptions in this case contains the following: "The same being an action for damages for personal injuries. The petition in this case contained two counts. The first count contained allegations of an action for damages based upon the law of Georgia; the second count contained allegations of an action for damages based upon the Federal employer's liability act of 1908 (35 Stat. 65, U. S. Comp. St. 1916, 8657-8665). Counsel for the defendants, before any evidence was offered or introduced, admitted to the court and the plaintiff in error that the plaintiff at the time of his injury was engaged in interstate commerce, and his right of recovery, if any, would be controlled by the Federal employer's liability act. The plaintiff in error then proceeded with the trial of his case upon the second count of his petition. The plaintiff then introduced evidence to sustain the allegations as contained in the second count of his petition. When the plaintiff thereafter rested his case counsel for the

defendants made an oral motion of nonsuit in said case to the court; whereupon his Honor Henry C. Hammond, judge presiding, after argument of counsel, sustained said motion of nonsuit and would not permit the case to be considered by the jury. The plaintiff then and there excepted to the action of the court in granting the nonsuit, and now excepts and assigns said action as error."

There was no one present at the time of the injury except the plaintiff, and his evidence in reference thereto was substantially as follows: "I was car-inspector and repairer for the Georgia Railroad during October, 1915, at Campania, in Columbia county, Georgia. As car-inspector and repairer my duties consisted in inspecting cars and repairing them, if needed, and to keep them up; to look after the safety appliances and see that they were safe to go over the road. On the 19th of October, 1915, while weighing a car, the end of the draw-head, what is known as the yoke or the end of the pole, was jerked out and the car was shoved into the side-track. I inspected the car and found it broken. It was a 'Georgia box-car' loaded with brick. The car was not taken from the scales and placed at any part of the yard, but just kicked out from the scales and turned on to the middle track. When I repaired this car it was 565 feet from the little platform they have at Campania, on the west side, toward Harlem. There were two tracks north of the main line, and the car that I repaired was on the side-track next to the main line. On October 19, 1915, I notified my superior in Augusta, Georgia, of the fact that this car was in need of repairs, and ordered material for the purpose of making said repairs. The material for this purpose was received on the morning of October 20, 1915, and I began the work of repairs about one o'clock in the afternoon, and it was about 5:30 o'clock when I finished." After stating how the repairs were made, the plaintiff proceeded as follows: "It was necessary to take this draw-head out and to remove it from the track where the car was, because it was 'safety first', according to the rule. The car couldn't pass over this draw-head, as it was liable to catch into the brake-beam on the car and cause a wreck. At the time I was injured I was endeavoring to remove this draw-head from the track, putting it beyond the track. I took up the draw-head to put it on the outside, to leave this safe, on account of switchmen falling over

it if left there: When I picked up my left foot. I stepped over the rail, this first rail here, and then I went to make a step with my right foot and it went down into a soft hole which was full of water. You could not tell anything about it, and my pants caught on a stob on the side of this, and in attempting to make the step it tripped me and threw me into the hole. I fell on my left side mostly. The end of the draw-head that coupled around was up this way (indicating to the jury), and in going down it went off of balance that way, with the heavy end down, and the yoke down this way (indicating to the jury), and struck me this way (indicating to the jury). This occurred at six o'clock in the evening, and it was dark. I could not have discovered the location of that hole or the stob at that time of evening, carrying that draw-head. I suppose the draw-head weighed about 300 or 400 pounds."

"I went to Campania as car-inspector and repairer upon the 20th of April, 1914. While working at Campania I had never repaired a car before at the point where I repaired the car at the time of my injury. If I ever did I don't remember it. I don't think I ever did. I was not familiar with the premises where I repaired this car. I would ride over it every morning in a car. I didn't notice the track, because that was not my business. I had a place there at the crossing where it was level and a good place to work on cars. I generally had them placed where it was a good place to work on them. . . At Campania the railroad-track is crossed by the public road, and there is where I call the office, as there is an old box-car there which I use for an office and keep material in. This is where I generally do repairing. I usually did repairing about 150 feet above the road-crossing, and on the other side down below the crossing, towards Augusta. Where I did the repair work on the car at the time I was injured was about 400 feet beyond where I generally did repair work. . . They could not pull that car to the usual place of repairing, because the draw-head was broken and they could not get hold of it. . . I had the draw-head on my arm, something like this (indicating to the jury). I stood up on my one foot with a weight like this draw-head. I never did go back to look at the stob. I only know about it catching my pants. I don't remember about seeing the stob. It was dark, but I felt it. It was wood and not iron. I didn't feel the stob until I went down by it in the hole. It had been jerked

up and left unfixed in there, in where the track was. It was when I went to draw my foot out of this hole that I found that it was on this stob. I don't know how the hole got there or who put it there. . . . I had taken about 15 steps from the place where I picked up this draw-head to where I was injured. I picked it up in the middle of the track, and then I took it across the aisle up into the other track, some 10 or 15 feet, I suppose. . . If the train-crew had seen fit they could have placed this car for me in the usual place of repair work, but they didn't do it. I never asked the train-crew to place this car. It was my duty to fix the car where I found it." The rest of the evidence of the plaintiff related to his age, physical condition, and pain and suffering.

It is not deemed necessary to elaborate the rulings stated in the headnotes.

*Judgment affirmed. Broyles, P. J. concurs. Stephens, J., not presiding.*